# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:06CV280-MU

| | |
|---|---|
| OPHELIA C. CULBREATH,<br>　　　　Plaintiff,<br><br>　　vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security Administration,<br>　　　　Defendant. | )<br>)<br>)<br>) **MEMORANDUM AND RECOMMENDATION**<br>)<br>)<br>)<br>)<br>)<br>) |

**THIS MATTER** is before the Court on the Plaintiff's "Motion to Remand [for Consideration of New Evidence]" and "Memorandum in Support ... " (both document #11) filed November 30, 2006; and the "Defendant's Objection to Plaintiff's Motion for Remand" (document #12) filed December 4, 2006, and "Motion For Summary Judgment" (document #13) and "Memorandum in Support of the Commissioner's Decision" (document # 14), both filed February 8, 2007. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's Motion to Remand be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

On August 22, 2002, the Plaintiff filed an application for a period of disability and Social Security disability benefits ("DIB"), alleging she was unable to work as of May 15, 1996 due to pain

in her hands. (Tr. 63.) The Plaintiff's claims were denied initially and on reconsideration.

The Plaintiff appealed administratively, and requested a hearing which was held on March 30, 2005. On May 18, 2005, the ALJ issued an opinion denying the Plaintiff's claim, concluding that the Plaintiff retained the residual functional capacity for "a significant range of light work," that is, light work limited to "stand[ing] and walk[ing] for up to two-thirds of the workday, perform[ing] occasional squatting, stooping, and repetitive handling (repetitive tasks requiring fine manipulation, such as typing or writing, limited to one hour per workday), and work involving low stress, low production requirements, and only simple, routine, repetitive tasks."[1]

The Plaintiff filed a timely Request for Review of Hearing Decision. On November 30, 2005, the Appeals Council denied her request for review, making the hearing decision the final decision of the Commissioner. On June 6, 2006, the Appeals Council granted the Plaintiff an extension of time to file an appeal.

The Plaintiff filed this action on August 1, 2006.

On appeal, the Plaintiff does not assign error to any of the ALJ's factual or legal conclusions, including his determination of the Plaintiff's residual functional capacity ("RFC") and his ultimate conclusion, based on the evidence presented to him, that the Plaintiff was not disabled. Instead, the Plaintiff presents only one narrow issue, contending that a note from her treating psychiatrist, Zofia Bochacki, M.D., dated June 22, 2006, provides a basis under sentence six of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) to remand for further administrative proceedings.

The parties' motions are now ripe for the Court's consideration.

---

[1] Based on her earnings record, Plaintiff had to show that she was disabled on or before December 31, 2002, when she last met the DIB insured status requirement.

## II. FACTUAL BACKGROUND

Relevant to the narrow issue raised on appeal, the Plaintiff testified that she had crying spells and had been very irritable for four or five years; that her doctors had told her that she had gone into depression following an injury to her hands; that she was treated for depression for the first time in 1996 or 1997, but had only one appointment; that she took Prozac, prescribed by her family doctor, which began to provide relief when the dosage was increased from 20 milligrams to 60 milligrams; and that she saw a therapist once a week, which gave her some insight into her problems.

A Report of Contact dated September 16, 2002, reflects that the Plaintiff told an Agency interviewer that her Prozac medication "help[ed]" and that she could "get along with people."

On January 8, 2003, Marianne Breslin, M.D., a psychiatrist for North Carolina Disability Determination Services ("NCDDS"), completed a Psychiatric Review Technique, concluding that the Plaintiff suffered depression that caused a mild restriction in her ability to perform activities of daily living, and a moderate non-disabling restriction in her abilities to function socially, concentrate, and maintain persistence and pace, but that there was no evidence of "decompensation" in a work-like setting.

The same day, Dr. Breslin completed a Mental Residual Functional Capacity Assessment, concluding that the Plaintiff suffered only moderate restrictions in her abilities to understand, remember, and carry out detailed instructions and to concentrate for extended periods, but that otherwise, she suffered no work-related limitations. Specifically, Dr. Breslin concluded that the Plaintiff's abilities to understand, remember and carry out short instructions, to remember work procedures and maintain a work schedule, to work in contact with co-workers, her supervisors, and the public, to make work decisions, and to set goals and otherwise function in a work setting were

3

unaffected. Accordingly, Dr. Breslin recommended that the Plaintiff be limited to simple, routine, repetitive tasks in a low production setting.

The Plaintiff has not assigned error to the ALJ's recitation of her medical records. Moreover, the Court has carefully reviewed the Plaintiff's medical records and finds that the ALJ's recitation is accurate. Accordingly, the undersigned adopts the ALJ's statement of the medical record, as follows:

> The medical evidence shows that her weight has fluctuated between [200] and 220 pounds....[2]
> 
> The medical record reflects the claimant's complaints of chronic wrist pain dating from a triangular fibrocartilage capsular tear in 1994. Electrophysiologic studies conducted in January 1996 revealed no abnormality but magnetic resonance imaging conducted in the following month showed ulnar avulsion of the triangular fiber cartilage, edema consistent with ulnar impaction, and radiocarpal synovitis. Physical therapy failed to effect significant relief. Although the record contains the report of a "Functional Capacity Evaluation" performed in 1997, it was performed prior to surgery. The claimant underwent arthroscopic repair and open osteotomy of distal ulna in 1998 with placement of a plate and screws and removal of hardware and retained suture material in 1998. The claimant also complained of chronic pain in both upper extremities. In October 1999, pain specialist Paul K. Jaszewski, M.D., noted no abnormalities on physical examination that would account for the claimant's pain but indicated that there may have been "some evidence of neuritis" at that time. (Exhibits 3F-7F and 18F-22F).
> 
> When the claimant saw Dr. Osier at Charlotte Orthopedic Specialists in April 2003, he noted that she had not continued to take medication or receive medical care for wrist pain. Dr. Osier recommended Celebrex and Lidoderm and a Futuro wrist brace, and told her to follow up with John Gaul, M.D., a former treating physician whom she had not seen since 1998. Dr. Gaul saw the claimant three months later and noted that the claimant had not received treatment for upper extremity (and. specifically, hand and wrist complaints) in five years. The claimant told Dr. Gaul that her wrist pain was radiating to her shoulders. He noted some grip strength weakness in the right hand but good range of motion in the wrist and no atrophy of the forearm (a clinical finding which, if present, would have been consistent with disuse syndrome). (Exhibits 14F and 15F).

---

[2]The record shows that the Plaintiff is 5' 2" tall.

In April 2003. the claimant presented to a physician at the Meridian Health Group with pain in her hands (worse on the left) which was diagnosed as tendonitis, but the record does not show that she complained of this discomfort again. She returned in May 2004 with complaints of pain in the neck and both shoulders, and the physical examination revealed signs of bilateral supraclavicular area swelling for which the physician prescribed ibuprofen, but the claimant did not make these complaints when she returned to the office in July or September 2004 for treatment of ailments. (Exhibit 12F).

In March 2000, the claimant complained to orthopedic physician's assistant Michael E. Dilello, P.A.-C, of right knee pain. The physical examination showed some joint effusion, lateral joint line pain to palpation, and an "extremely positive McMurray's test for pain in the lateral joint." He offered the diagnostic impression of a torn lateral meniscus, which was confirmed no magnetic resonance imaging. The tear was surgically repaired. The claimant complained of recurrent right knee pain in December 2002, but a physician at the Meridian Health Group diagnosed "tendonitis/sprain" for which she was provided a prescription for Motrin (ibuprofen). (Exhibits 4F and 8F). The record does not indicate other major complaints of knee pain.

The medical evidence shows that the claimant has been prescribed Prozac and Pamelor prescribed for depression and insomnia, respectively, [by] Dr. Carlson, a rehabilitation specialist, and by a physician at the Meridian Health Group (Exhibit 12F). She also consulted psychiatrist Zofia Bochacki, M.D., in August and December 2004, who diagnosed major recurrent depression and chronic pain syndrome and prescribed Prozac and Trazodone (the latter used for insomnia) and Neurontin for neuropathic pain (Exhibit 13F). However, the Administrative Law Judge notes that the record does not confirm the claimant's testimony that she sees a "counselor" once a week for mental health care.

Psychologist Patricia M. Hogan, Ph.D., examined the claimant at the request of the Administration on December 17, 2002. The claimant acknowledged the onset of depression with that of her physical health problems. The claimant said she felt sad, worried about the future, suffers from crying spells, irritability, decreased interest, low energy, social withdrawal, sleep and memory problems, and feelings of worthlessness. The mental status examination included a notation that the claimant admitted to some suicidal thoughts but was in "no danger of actually hurting herself and relatively mild evidence of memory or concentration deficits." (Exhibit 10F).

(Tr. 24-25.)

The ALJ considered the above-recited evidence, as well as other undisputed evidence, and determined that Plaintiff was not "disabled" for Social Security purposes at any time prior to her

date last insured, December 31, 2002.

As noted above, the Plaintiff moves to remand solely upon the basis of a June 22, 2006 note from Dr. Bochacki that states in its entirety:

> To Whom It May Concern. [The Plaintiff] has been under my care since April 15, 2004. She is treated for chronic depression, anxiety and chronic pain. [She] was last seen on June 22, 2006. [She] continues to struggle with both physical and emotional problems preventing her from work. I consider [Plaintiff] permanently disabled from any work.

Exhibit 1 to Plaintiff's "Memorandum in Support" (document #11).

### III. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a

6

conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to re-weigh the evidence, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. **DISCUSSION OF CLAIM**

The question before the ALJ was whether the Plaintiff became "disabled" as that term of art is defined for Social Security purposes at any time prior her date last insured, December 31, 2002.[3] It is not enough for a claimant to show that she suffered from severe medical conditions or impairments which later became disabling; rather, the subject medical conditions must have become disabling prior to the date last insured. Harrah v. Richardson, 446 F.2d 1, 2 (4th Cir. 1971) (no "manifest error in the record of the prior administrative proceedings" where Plaintiff's conditions

---

[3]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:
  inability to engage in any substantial gainful activity by reason of any medically determinable
  physical or mental impairment which can be expected to result in death or which has lasted or can
  be expected to last for a continuous period of not less than 12 months . . . .
  Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

did not become disabling until after the expiration of his insured status).

The ALJ considered the above-recited evidence and found after the hearing that the Plaintiff had not engaged in substantial gainful activity at any time relevant to his decision; that she suffered "chronic wrist pain dating from a triangular fibrocartilage capsular tear ([requiring] arthroscopic repair and open osteotomy of distal ulna in 1998 with placement of a plate and screws, [and] removal of [the] hardware and retained suture material in 1998); bilateral shoulder and neck pain; torn-and-repaired right medial meniscus with recurrent knee pain; morbid obesity; and depression," which were severe impairments within the meaning of the Regulations; but that Plaintiff's combination of impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (a.k.a. "the Listings"); that the Plaintiff was unable to perform her past relevant work; that Plaintiff was able to perform "a significant range of light work,"[4] that is, light work limited to "stand[ing] and walk[ing] for up to two-thirds of the workday, perform[ing] occasional squatting, stooping, and repetitive handling (repetitive tasks requiring fine manipulation, such as typing or writing, limited to one hour per workday), and work involving low stress, low production requirements, and only simple, routine, repetitive tasks"; that testimony provided by a Vocational Expert established the existence of other jobs in the national economy which the Plaintiff could perform; and, therefore, that the Plaintiff was <u>not</u> disabled.

---

[4]"Light" work is defined in 20 C.F.R. § 404.1567(b) as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

As noted above, on appeal the Plaintiff does not contest the ALJ's determination of her residual functional capacity or his ultimate conclusion that she was not disabled. Rather, the Plaintiff contends only that Dr. Bochacki's June 22, 2006 note warrants remand for further administrative proceedings.

At the outset, the undersigned notes that Fourth Circuit precedent clearly dictates that a district court cannot consider evidence which was not presented to the ALJ. Smith v. Chater, 99 F.3d 635, 638 n.5 (4th Cir. 1996), citing United States v. Carlo Bianchi & Co., 373 U.S. 709, 714-715 (1963). Reviewing courts are restricted to the administrative record when determining whether the decision of the ALJ is supported by substantial evidence. Wilkins v. Secretary, Department of Health and Human Services, 953 F.2d 93, 96 (4th Cir. 1991), citing Huckabee v. Richardson, 468 F.2d 1380, 1381 (4th Cir. 1972).

Nor does the Plaintiff's proposed additional evidence meet the requirements for a remand under 42 U.S.C. § 405(g). In order for a reviewing court to remand a case to the Commissioner for the consideration of additional evidence, the evidence must be new, material and there must be good cause for failing to present the evidence earlier. See 42 U.S.C. § 405(g); and Wilkins v. Secretary, Department of Health and Human Services, 953 F.2d 93, 95-96 (4th Cir. 1991). Evidence is considered "new" if it is relevant to the determination of disability at the time the application was filed and not merely cumulative or duplicative. Wilkins, 953 F.2d at 96, citing Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990). For evidence to be considered material, it must be shown that there is a reasonable possibility that the additional evidence would have changed the outcome of the decision. Wilkins, 953 F.2d at 96, citing Borders v. Heckler, 777 F.2d 954, 956 (4th Cir. 1985). Lastly, Plaintiff must exhibit good cause for failing to present the evidence earlier. Melkonyan v.

Sullivan, 501 U.S. 89, 100 (1991). Each of these requirements must be satisfied in order to secure a remand for the consideration of additional evidence. Wilkins, 953 F.2d at 96, citing Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir.1990).

Although the Plaintiff has good cause for not presenting Dr. Bochacki's note earlier, that is, it was not prepared until after the Appeals Council denied the Plaintiff's Request for Review, she clearly has not met the newness or materiality requirements for a remand of the case. Concerning the first required element, Dr. Bochacki's note is in the main merely repetitive of his earlier findings from April and December 2004 when he diagnosed depression and prescribed Prozac, treatment that the Plaintiff has stated repeatedly was effective in controlling her depression. Accord Wilkins, 953 F.2d at 96 (additional evidence that is merely cumulative or duplicative of evidence that was considered during administrative process will not support remand), citing Williams, 905 F.2d at 216. Dr. Bochacki stated that he "saw" the Plaintiff on June 22, 2006, but his note does not indicate that he performed a mental health evaluation, and even if he did perform such an evaluation in June 2006, the note does not contain any of his findings, other than his generalized opinion that the Plaintiff was "disabled."

Similarly, the Plaintiff has failed to show that Dr. Bochacki's note is material. As noted above, in order to be deemed material, it must be shown that there is a reasonable possibility that the additional evidence would have changed the outcome. Wilkins, 953 F.2d at 96, citing Borders v. Heckler, 777 F.2d 954, 956 (4th Cir. 1985). First, Dr. Bochacki did not initially treat the Plaintiff until April 2004, more than 15 months after her eligibility for disability benefits had expired. There is no indication that Dr. Bochacki's initial diagnosis of depression related back to the Plaintiff's mental condition in December 2002, and certainly, there is no reason to believe that Dr. Bochacki's

most recent note relates to her condition in 2002.

Moreover, even assuming arguendo that Dr. Bochacki intended his 2006 note to relate back to the Plaintiff's mental and emotional condition in December 2002, that record hardly creates a reasonably possibility of a finding that the Plaintiff was disabled prior to the expiration of her insured status. Indeed, as discussed above, Dr. Bochacki did not first treat the Plaintiff until April 2004, there is no indication in the record that Dr. Bochacki evaluated the Plaintiff's mental condition at any time after December 2004, and his June 2006 note contained no factual or medical findings to support his opinion that the Plaintiff could not work.[5]

Rather, the ALJ properly relied upon Dr. Hogan's psychological examination – performed two weeks before the Plaintiff's last date insured – and Dr. Breslin's review of Dr. Hogan's notes in concluding that the Plaintiff's depression had, at most, a moderate, nondisabling impact on her ability to work, and that the Plaintiff could perform simple routine repetitive tasks in a low production environment. Accordingly, the ALJ's determination of the Plaintiff's mental residual functional capacity was and remains supported by substantial evidence.

In short, the undersigned concludes that there is no basis for remand for consideration of new evidence and that, as the Plaintiff concedes, the ALJ's decision that she was not disabled is otherwise supported by substantial evidence.

---

[5]The Fourth Circuit has established that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

## V. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion to Remand [for Consideration of New Evidence]" (document #11) be **DENIED;** that Defendant's "Motion for Summary Judgment" (document #13) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## VI. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to de novo review by the district court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Graham C. Mullen.

**SO RECOMMENDED AND ORDERED**.

Signed: February 12, 2007

*Carl Horn, III*
_____

Carl Horn, III
United States Magistrate Judge